UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN NUSSBAUM FRAGIN, in her capacity
as Trustee for ELANA B. NUSSBAUM TRUST,
the TAMAR MIRIAM NUSSBAUM TRUST,
the DANIEL ZACHARY NUSSBAUM TRUST,
and the SAMUEL ELIEZER NUSSBAUM
TRUST ,

                                  Plaintiff,

                - against -

LEONARD MEZEI, the ECONOMIC
GROWTH GROUP, REPOTEX, INC., RON
FRIEDMAN, and CATHERINE ILARDI,

                                  Defendants.

**ECF CASE**


**MEMORANDUM
OPINION & ORDER**

09 Civ. 10287 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

                The Complaint in this action alleges violations of the federal securities law, fraud,

fraudulent inducement, negligent misrepresentation, conversion, and breach of contract.  (Cmplt.

¶ 1)  Plaintiff Karen Fragin is the Trustee of her children's trusts, and Defendants include a

family friend, Leonard Mezei, and two companies allegedly controlled by Mezei – Economic

Growth Group and Repotex, Inc.  The Complaint alleges that Defendants engineered a scheme to

defraud Mrs. Fragin's children's trusts.  Plaintiff has moved for summary judgment on the

Complaint's Sixth Cause of Action, which alleges that Defendant Repotex, Inc. committed

breach of contract by failing to make payments due the trusts under certain promissory notes it

issued.  (Cmplt. ¶¶ 95-99)  For the reasons stated below, Plaintiff's motion for summary

judgment on the Complaint's Sixth Cause of Action will be denied.

## BACKGROUND

Karen Fragin is the Trustee for the Elana B. Nussbaum Trust, the Moshe Jonathan Nussbaum Trust, the Tamar Miriam Nussbaum Trust, the Daniel Zachary Nussbaum Trust, and the Samuel Eliezer Nussbaum Trust (collectively, the Nussbaum Trusts).  (Pltf. R. 56.1 Stat. ¶ ¶ 1, 2)[1]  Defendant Leonard Mezei is the president of defendant Economic Growth Group ("EGG") and owns and controls Defendant Repotex, Inc.  (Id. ¶ 3-4)  Gary Fragin was formerly the husband of Plaintiff Karen Fragin, and is a third-party defendant in this action.  (Dkt. No. 25, Answer and Third-Party Cmplt.)

The Complaint alleges that "Mezei and his related entities" own an equity interest in Compass Partners LLC ("Compass"), an investment firm that specializes in acquiring and servicing distressed commercial mortgages.  (Cmplt. ¶ 9)  Defendant Ron Friedman is the president of Compass.  (Id.)  In or about December 2006, Compass purchased at auction certain assets of bankrupt USA Commercial Mortgage Company ("USACM").  (Id. ¶ 10)  Silar Advisors, an asset management company, arranged for Gottex Fund Management, a "global alternative investment management group," to provide most of the financing for Compass's purchase of USACM's assets.  (Id. ¶ 11)  Gary Fragin – Plaintiff's former husband – is a principal in Silar.  (Def. R. 56.1 Resp. ¶ 38)

As a result of Gottex's financing of Compass's purchase of USACM's assets, Gottex held most of Compass's debt in the form of a multi-million dollar Senior Liquidating Repurchase Facility (the "Senior Repo").  (Cmplt. ¶ 12, Def. R. 56.1 Resp. ¶ 34-37)

[1]  To the extent that this Court relies on facts drawn from Rule 56.1 statements, it does so because the opposing party has either not disputed those facts or has not done so with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .  fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).

In or about May 2008, Mezei sought investors to buy out Gottex's loan to Compass, allegedly "in order to protect his equity interest in Compass from any attempt by Gottex to foreclose on the Senior Repo." (Cmplt. ¶ 13)  Through Gary Fragin, Mezei offered the Nussbaum Trusts an opportunity to purchase part of Gottex's loan to Compass.  (Id. ¶ 14)  Mezei allegedly represented to Gary Fragin "that funds sent from the [Nussbaum] Trusts to his company, EGG, would be used to purchase directly part of Compass' debt to Gottex, so as to place the Nussbaum Trusts in the position of lender to Compass and oblige Compass to repay the [Nussbaum] Trusts their principal plus eighteen percent (18%) interest annually for the term of the investment." (Id. ¶ 15)

On or about June 2, 2008, the Nussbaum Trusts transmitted a total of $800,000 to EGG "for purchase of 'compass USA 18% paper.'"[2] (Id. ¶ 23; Pltf. R. 56.1 Stat. ¶ 6)  "After sending funds to EGG to purchase part of Gottex'[s] loan to Compass, the Nussbaum Trusts expected to receive notes from Compass," and "[o]ver the next month, the Nussbaum Trusts sought from Mr. Mezei 'compass USA 18% paper.'" (Cmplt. ¶¶ 25-26; Def. R. 56.1. Resp. ¶ 6).

"On or about July 8, 2008, the Nussbaum Trusts each received from Repotex, as Borrower, a Term Promissory Note dated as of June 1, 2008, with a maturity date of June 1, 2010." (Id. ¶ 28)  "Until the Nussbaum Trusts received the [Repotex] Notes, neither the Trusts nor their Trustee had ever heard of Repotex."  (Id. ¶ 29)  While amounts set forth in the Repotex Notes correspond to the amounts each Trust had transmitted to EGG (Id. ¶ 7; Karen Fragin Aff., Exhs. A-E; Pltf. R. 56.1. Stat. ¶¶ 6, 9; Def. R. 56.1. Resp. ¶¶ 6, 9), Plaintiff alleges that

---

[2]  The Trusts wired the following sums to EGG:  the Elana B. Nussbaum Trust wired $200,000; the Moshe Jonathan Nussbaum Trust wired $200,000; the Tamar Miriam Nussbaum Trust wired $200,000; the Daniel Zachary Nussbaum Trust wired $130,000; and the Samuel Eliezer Nussbaum Trust wired $60,000 and sent a $10,000 check to EGG.  (Pltf. R. 56.1 Stat. ¶ 6)

> [t]he Notes evidence that Mr. Mezei and Egg did not use the funds from the
> Trusts to purchase part of Compass' debt to Gottex and obtain promissory notes
> issued by Compass, as Borrower, to the Trusts.
>
> Rather, defendants Mezei, EGG and [Defendant Catherine] Ilardi, without the
> knowledge or consent of the Nussbaum Trusts or their Trustee, transferred to
> Repotex the funds that EGG had received from the Nussbaum Trusts."
>
> In turn, Repotex, without the knowledge or consent of the Nussbaum Trusts or
> their Trustee, issued its own promissory notes to the Nussbaum Trusts and itself
> used the funds from the Nussbaum Trusts to purchase a participation in the Senior
> Repo.
>
> Upon information and belief, Mr. Friedman aided and abetted Mr. Mezei in this
> unlawful and undisclosed diversion of the Trusts' funds to purchase Compass'
> debt indirectly through Repotex rather than directly by the Trusts.

(Cmplt. ¶¶ 31-34)

In the Repotex Notes, Repotex promises to pay to each Nussbaum Trust the

principal amount set forth in the Note plus interest at 18% per annum.  (Pltf. R. 56.1. Stat. ¶ 8;

Karen Fragin Aff., Exhs. A-E)  The Notes provide that "[i]nterest payments shall be made on

each Monthly Payment Date with respect to interest accrued during the prior month."  (Pltf. R.

56.1. Stat. ¶ 12; Karen Fragin Aff., Exhs. A-E, ¶ 4).  The Notes further provide that the Monthly

Payment Date is "July 31, 2008, and the last day of each calendar month thereafter."  (Pltf. R.

56.1 Stat. ¶ 13; Karen Fragin Aff., Exhs. A-E, ¶ 1)  Each Note likewise states that "[a]ll unpaid

principal and accrued interest on this Note shall be paid in full on the Maturity Date," which is

defined as June 1, 2010.  (Pltf. R. 56.1 Stat. ¶¶ 14-15; Karen Fragin Aff., Exhs. A-E, ¶¶ 2, 4)

Under the Repotex Notes, an "Event of Default" includes the "[f]ailure of Borrower to pay any

amount due as and when required under this Note," and entitles the noteholder to "all rights

accorded by applicable law."  (Pltf. R. 56.1. Stat. ¶¶ 16-17; Karen Fragin Aff., Exhs. A-E, ¶¶ 7-

8)

4

Repotex made interest payments to the Nussbaum Trusts on July 31, 2008, August 31, 2008, and September 30, 2008. (Pltf. R. 56.1 Stat. ¶¶ 19-22) Repotex has not made any other payments of interest or principal to the Nussbaum Trusts. (Id. ¶ 25)

Repotex contends that no amount is due on the Repotex Notes because the Notes do not reflect the parties' actual agreement, which was that the Nussbaum Trusts would purchase a participation position in the Silar Senior Repo. (Def. R. 56.1 Resp. ¶¶ 23, 28, 29; Mezei Decl. ¶¶ 1, 4-5, 13-15, 17-27) Repotex states that it was formed to purchase part or all of the Silar Senior Repo participation, and that the financing arrangement between Silar and Compass has a multi-tier structure which provides for a "waterfall": Compass first repays senior lending tiers, and once a senior tier is satisfied, junior lenders receive payment. (Mezei Decl. ¶¶ 7, 15) Repotex contends that the parties' agreement was that payments to the Nussbaum Trusts would only begin once Compass had paid Silar under the Senior Repo and Silar, in turn, had paid Senior Repo participants, such as Repotex. (Id. ¶ 18) Repotex submits that the true nature of the agreement was "lost in translation" by the scrivener (Def. R. 56.1 ¶ 82), and that because the Notes reflect mutual mistake, they should be reformed. (Def. Br. 11)

## DISCUSSION

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could

5

rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  However, "a party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).

   "To succeed on a motion for summary judgment, a plaintiff suing on a promissory note needs to 'merely establish the absence of a genuine issue as to the execution and default unless the obligor demonstrates the existence of a triable issue of fact.'" Valley Nat. Bank v. Oxygen Unlimited, LLC, No. 10 Civ. 5815(GBD), 2010 WL 5422508, at *3 (S.D.N.Y. 2010) (quoting Novick v. AXA Network, LLC, 2009 WL 2735201 at *2 (S.D.N.Y.2009) (citations omitted));  See also Miller v. Steloff, 686 F.Supp. 91, 93 (S.D.N.Y.1988) (citing Interman Industrial Products, Ltd. v. R.S.M. Electron Power, Inc., 371 N.Y.S.2d 675, 679 (1975)); East New York Sav. Bank v. Baccaray, 214 A.D.2d 601, 602 (1995) (finding that plaintiff had met its prima facie burden by submitting a copy of the note and an affidavit stating that Defendant failed to make payments); AAI Recoveries, Inc. v Pijuan, 13 F.Supp.2d 448, 450 (S.D.N.Y. 1998) ("Where a Plaintiff can show that there is 'no material question concerning execution and default' on a promissory note, summary judgment is appropriate.")

   "Under New York law, to establish a prima facie case of default on a promissory note, plaintiff must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment." MM Arizona Holdings LLC v Bonanno, 658 F.Supp.2d 589, 592-93 (S.D.N.Y. 2009) (citing Export-Import Bank of U.S. v. Agricola Del Mar BCS, 536 F.Supp.2d 345, 349 (S.D.N.Y.2008).  A plaintiff can meet its burden of providing proof of the valid notes by presenting them on its motion for summary judgment.  See, e.g., Miller, 686

F.Supp. at 93; <u>Lehman Bros. Holdings Inc. v. Walji</u>, 2011 WL 1842838, at *3 (S.D.N.Y. May

11, 2011).

## II.     THERE IS A MATERIAL ISSUE OF FACT AS TO WHETHER ENFORCEABLE AGREEMENTS EXIST BETWEEN REPOTEX AND THE NUSSBAUM TRUSTS

The gist of the Complaint is that Defendants obtained monies from the Nussbaum

Trusts by fraud, and converted the Trusts' monies to a purpose never agreed to by Plaintiff.  The

Complaint's Second Cause of Action – for fraud – alleges:

> Mr. Mezei falsely represented that he would use the funds from the Nussbaum Trusts to purchase directly part of Compass' debt to Gottex, so as to place the Nussbaum Trusts in the position of lender to Compass and oblige Compass to repay the trusts.

> Instead of using the Nussbaum Trusts' funds to purchase part of Compass' debt, Mr. Mezei, his company EGG and his secretary Ms. Ilardi, aided and abetted by Mr. Friedman, gave the Trusts' funds to Repotex to loan to Compass.

> . . . .

> Mrs. Fragin would not have invested funds from the Nussbaum Trusts with Mr. Mezei if she had known that the funds would not be used to purchase a direct interest in Compass' debt. . . .

(Cmplt. ¶¶ 63, 64, 71)

> Similarly, in the Fifth Cause of Action – for conversion – Plaintiff alleges that

> Mr. Mezei, EGG and Ms. Ilardi, aided and abetted by Mr. Friedman, intentionally diverted the Trusts' funds from EGG to Repotex, to be loaned to Compass. Repotex has failed to repay to the Trusts the principal amounts sent to EGG, and had failed to pay any interest due and owing to the Trusts since September 20, 2008.

> Mr. Mezei, EGG, Ms. Ilardi and Repotex have converted the monies due and owing to the Trusts for their own use and benefit.

(Cmplt. ¶¶ 90-92)

The Complaint's fraud and conversion claims rely on numerous factual allegations set forth earlier in the Complaint, in which Plaintiff asserts that she and the Nussbaum Trusts (1) agreed to purchase "compass USA 18% paper" (Cmplt. ¶ 23, 26); (2) never agreed to accept promissory notes from Repotex in exchange for the funds provided to EGG; and (3) had never heard of Repotex before receiving the Repotex Notes:

> Repotex, <u>without the knowledge or consent of the Nussbaum Trusts or their Trustee</u>, issued its own promissory notes to the Nussbaum Trusts and itself used the funds from the Nussbaum Trusts. . . .
>
> Until the Nussbaum Trusts received the [Repotex] Notes, neither the Trusts nor their Trustee had ever heard of Repotex.

(Cmplt. ¶¶ 33, 29) (emphasis added).

Having alleged that Repotex was the recipient of monies obtained from the Nussbuam Trusts through fraud, and that Repotex converted the Trusts' funds, the Complaint nonetheless goes on to allege in the Sixth Cause of Action – for breach of contract – that the Repotex "Notes are valid and binding contracts between the Trusts and Repotex." (Cmplt. ¶ 96) While Fed.R.Civ.P. 8(d)(3) permits a party to "state as many claims . . . as it has, regardless of consistency," <u>see</u> <u>Henry v. Daytop Village, Inc.,</u> 42 F.3d 89, 95 (2d Cir. 1994) (citing 2A James W. Moore & Jo D. Lucas, Moore's Federal Practice ¶ 8.32, at 8-214 to 8-215 (2d ed. 1994) ("The inconsistency may lie either in the statement of the facts or in the legal theories adopted . . . ."), at her deposition, Plaintiff continued to assert that she never agreed to purchase Repotex Notes.

Plaintiff testified that she never spoke "with anybody from Repotex concerning the deal." (K. Fragin Dep. 78) She further asserted that "[t]he notes were supposed to be Compass notes. They became Repotex notes." (<u>Id</u>. at 106) When shown the Repotex Notes and

8

asked whether they were consistent with her "understanding of the purchase," Plaintiff answered "No. . . . The notes were supposed to be to buy Compass paper at 18 percent. This says Repotex." (Id. at 107-08)

Plaintiff further testified that she realized when first reading the Notes that they did not "reflect[] the deal":

I knew that they did not reflect the deal, because in reviewing them with my husband, the name Repotex was a new entity that was never heard of before.

Q. Did you advise Mr. Mezei that the wording in the notes did not reflect your understanding of the deal when you received them?

. . . .

A.  I did not.

Q.  Did your husband?

A.  Yes, sir.

. . . .

Q,  Do you know when he notified [Mezei] of that?

A.  Immediately upon reading it.

Q.  And do you know what he said to Mr. Mezei?

A.  What is – yes, I do know.

Q.  What did he say?

A.  What is Repotex.

. . . .
Q. When you received the notes, your husband called Mr. Mezei and informed him that the notes did not reflect the deal?

A.  Correct.

9

Q.  Do you know how long after you received the notes that telephone call was?

A.  Immediately.

. . . .

. . . I know that the conversation went what the heck is Repotex. . . .

. . . .

I did this deal solely based on the fact that I trusted Mr. Mezei to put the money where it was supposed to go, and it didn't go there.  There became a different company.

. . . .

Q.  Other than the fact that the notes said Repotex, did [your husband] object otherwise to the notes?

A.  Other than the fact that it wasn't what we purchased – what I had purchased.

Q.  And what did he say?

A.  What's Repotex.

(K. Fragin Dep. 111-15, 118)

Plaintiff also testified that Mezei had never mentioned Repotex:

He never said the word Repotex.  He omitted – obviously, he knew about Repotex.  Never mentioned the word Repotex until the original note came that said the word.

(Id. at 141) [3]

In explaining why she believed that the Trusts had been defrauded, Plaintiff

testified that the money sent to EGG "never went where it was supposed to go. . .  when I knew I

wasn't buying Compass, and I asked for my money back, no. . . . I think it was a fraud."  (Id. at

149)

---

[3]  Mezei admitted at his deposition that he "probably" never mentioned  Repotex prior to receiving the funds from the Nussbaum Trusts.  (Mezei Dep. 141-42)

"In order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props. S.R.L. v. Greystone Business Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (citing Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 177 (2d Cir.2004); Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996)).

As is apparent from the deposition excerpts quoted above, Plaintiff has consistently asserted that there was no agreement between the Nussbaum Trusts and Repotex to purchase Repotex promissory notes.  Plaintiff testified that she believed the Trusts were purchasing "Compass paper at 18 percent."  When she and her husband received the Repotex notes, they were surprised to see the reference to Repotex, given that Mezei had never mentioned Repotex.

In sum, both the facts pleaded in the Complaint and Plaintiff's deposition testimony are entirely incompatible with a finding that the Repotex Notes constitute an enforceable agreement between the Nussbaum Trusts and Repotex.

"Under New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties."  Schurr v. Austin Galleries of Illinois, Inc., 719 F.2d 571, 576 (2d. Cir. 1983) (citations omitted).  "If there is no meeting of the minds on all essential terms, there is no contract."  Id.  Based on the record before this Court, there was no meeting of the minds as to the Nussbaum Trusts' purchase of Repotex promissory notes.  To the contrary, Plaintiff contended at her deposition that the Trusts' monies were procured through fraud.

11

Because Plaintiff has not demonstrated that the Repotex Notes constitute

enforceable agreements between the Nussbaum Trusts and Repotex, Plaintiff's motion for

summary judgment on her breach of contract claim will be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment on the

Complaint's Sixth Cause of Action for breach of contract is DENIED.

Dated: New York, New York
       February 13, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge

12