UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN NUSSBAUM FRAGIN and NANCY
MARKOVITCH, in their capacity as Trustees for
the ELANA B. NUSSBAUM TRUST, the
MOSHE JONATHAN NUSSBAUM TRUST, the
TAMAR MIRIAM NUSSBAUM TRUST, the
DANIEL ZACHARY NUSSBAUM TRUST, and
the SAMUEL ELIEZER NUSSBAUM TRUST,

                  Plaintiff,

    - against -

LEONARD MEZEI, the ECONOMIC GROWTH
GROUP, REPOTEX, INC., and RON FRIEDMAN,
                Defendants/Third-Party
                Plaintiffs,

    - against -

GARY S. FRAGIN,

              Third-Party Defendant.

**Case No. 1:09-cv-10287-AJN**

ECF Case

# PLAINTIFFS' AND THIRD-PARTY DEFENDANTS' LOCAL CIVIL RULE 56.1
# <u>RESPONSE STATEMENT</u>

Hoguet Newman Regal & Kenney, LLP
10 East 40th Street
New York, New York 10016
Telephone: 212- 689-8808
Facsimile: 212-689-5101

Pursuant to SDNY Local Civil Rule 56.1, Plaintiffs Karen Nussbaum Fragin and Nancy Markovitch, in their capacity as Trustees for the Elana B. Nussbaum Trust, the Moshe Jonathan Nussbaum Trusts, the Tamar Miriam Nussbaum Trust, the Daniel Zachary Nussbaum Trust, and the Samuel Eliezer Nussbaum Trust (the "Trusts," and collectively, with Mrs. Fragin and Mrs. Markovitch, the "Plaintiffs"), together with Third-Party Defendant Gary S. Fragin ("Mr. Fragin"), by their attorneys Hoguet Newman Regal & Kenney LLP, respectfully submit this response to the Local Civil Rule 56.1 Statement of Defendants/Third-Party Plaintiffs in Support of Motion for Summary Judgment ("Rule 56.1 Statement").

This Statement and the accompanying memorandum of law show that Defendants/Third-Party Plaintiffs' motion for summary judgment should be denied because the parties dispute multiple material issues of fact, including but limited to such key issues as:

- What, if anything, Defendants told Mr. Fragin about the investment before and after the Trusts transferred $800,000 to purchase participation interests in the Senior Repo;

- What, if anything, Mr. Fragin knew about the investment opportunity and the Senior Repo prior to the time the Trusts transferred $800,000 to purchase participation interests in the Senior Repo;

- What the Trusts intended to purchase and what Defendants actually sold to them in exchange for their $800,000 investment;

- Whether or not the Trusts' reliance on Mr. Mezei was reasonable; and

- The terms of the Trusts' investment.

## Response to Defendants/Third-Party Plaintiffs' 56.1 Statement

A.      **This Action**

        i.     Causes of Action and Principle Defenses

1.      Admit.

2.      Admit.

3.      Admit.

4.      Admit.

        ii.    Summary

5.      Admit.

6.      Deny that the Trusts purchased a $800,000 participation position in the Senior Repo; in fact, the Defendants issued to the Trusts notes from Repotex, which holds the direct participation interest in the Senior Repo. Affidavit of Plaintiff in Support of Motion Partial Summary Judgment, sworn to July 16, 2010 ("K. Fragin Aff."), Exhibits A through E (collectively attached as Exhibit 4 to the Declaration of Jordan A. Greenberger in Support of Motion for Summary Judgment, dated April 13, 2012 ("Greenberger Aff."); Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13. Admit that the Trusts have not been repaid principal or interest since September 2008. Deny knowledge and information sufficient to form a belief as to whether or not payments under the Senior Repo have stopped. Deny that, even if payments under the Senior Repo have stopped, this is the reason that the Trusts have not been repaid; the Notes issued by Repotex to the Trust are not conditioned on payments under the Senior Repo but, rather, require Repotex to make payments to the Trusts each month of interest at the rate of 18% per annum and repayment of the principal and accrued interest by June 1, 2010. K.

Fragin Aff., Exhibits A through E at Section 4 (attached to the Greenberger Aff. as Exhibit 4).

7.     Admit that the Trusts allege that, but for Defendants' misrepresentations and omissions, the Trusts would not have sent $800,000 to EGG to purchase Compass debt; and deny any requirement on the part of the Trusts to "allege that Mr. Mezei's alleged representations caused the Senior Repo to stop paying."

**B.     The Underlying $50 Million Deal**

8.     Admit there is a transaction underlying the $800,000 at issue but dispute the amount of the underlying transaction; the Credit Memorandum prepared by Silar in February 2008 states that the amount of the underlying transaction was $537,76,436. 1st Mezei Decl., Exhibit 18 at page 3.

        i.     The Distressed Assets Are Purchased Out Of Bankruptcy & Assigned To Compass

9.     Admit that a portfolio of distressed assets was purchased and assigned to Compass, but disputes the amount of the transaction; the amount of the underlying transaction was $537,76,436. 1st Mezei Decl., Exhibit 18 at page 3.

10.     Deny knowledge and information sufficient to form a belief as to the truth of the statement. Defendants/Third-Party Plaintiffs cite to Mr. Fragin's testimony to support the statement in paragraph 10 when, in fact, Mr. Fragin was asked: "Was there any other revenue stream for this deal that would be coming into Silar?", he testified: "I don't know." G. Fragin Depo. 110:1-3.

11.     Deny knowledge and information sufficient to form a belief as to the truth of the statement.

12. Deny knowledge and information sufficient to form a belief as to the truth of the statement.

13. Admit, and further state that Mr. Mezei and his son-in-law Ron Friedman oversaw Compass. G. Fragin Depo. 62:23-63:1.

14. Dispute that "Compass did not put up any money to buy the assets." Compass held the common equity piece of the asset purchase, in the amount of approximately $2 million. 1st Mezei Decl., Exhibit 18 at page 3; Rule 56.1 Statement, ¶ 39. Deny knowledge and information sufficient to form a belief as to the truth of the statement that "Compass found the assets and won the bid to purchase the assets."

        ii.   <u>Silar Finances The Purchase, And Negotiates & Leads The Financing Transaction</u>

15. Admit that Silar's business was asset backed lending, but dispute that Compass obtained financing from Silar. Gottex was the primary and senior lender. G. Fragin Depo. 64:24-65:21.

16. Dispute the amount of the transaction and the amount financed by Silar. 1st Mezei Decl., Exhibit 18 at page 3; G. Fragin Depo. 68:17-70:12.

17. Deny knowledge and information sufficient to form a belief as to the truth of the statement.

        iii.   <u>The Waterfall, Generally</u>

18. Admit.

19. Admit.

20. Admit that Mr. Fragin testified as set forth in paragraph 20.

21. Admit that Mr. Mezei testified as set forth in paragraph 21.

22. Admit there is a document entitled Global Paying Agency Agreement under which Silar is the paying agent but dispute that Silar had complete control over the flow of all the monies, and respectfully refer the Court to that document for its terms and provisions.

23. Admit there is a document entitled Global Paying Agency Agreement but deny knowledge and information sufficient to form a belief as to the truth of the statement and respectfully refer the Court to that document for its terms and provisions.

     iv.   <u>The Senior Repo ($38 million)</u>

24. Admit.

25. Admit.

     *a.*    *Repos, Generally*

26. Admit.

27. Admit that Mr. Fragin testified as set forth in paragraph 27.

28. Admit that Mr. Fragin testified that about "repo," as he "understood them in the treasury market," that "all it is is another way to make a loan." G. Fragin Depo. 140:4-141:4.

     *b.*    *This Repo And Compass' Conditional Repurchase Right*

29. Admit.

30. Deny knowledge and information sufficient to form a belief as to the truth of the statement that Silar "bought the deal."

31. Admit.

32. Dispute that the only way for Compass to make the 18% payments to Silar was through liquidating the non-performing assets; Compass also could have made

payments in part from the servicing fees or other sources. Rule 56.1 Statement, ¶ 9; G. Fragin Depo. 71:17-22, 123:11-16.

33.     Dispute that the only way for Compass to make the 18% payments to Silar was through liquidating the non-performing assets and that Compass had no material net worth other than the portfolio of non-performing assets; Compass also could have made payments in part from the servicing fees or other sources. Rule 56.1 Statement, ¶ 9; G. Fragin Depo. 71:17-22, 123:11-16.

34.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further states that no response is required because the statement is conclusory and not a statement of fact.

35.     Deny knowledge and information sufficient to form a belief as to the truth of the statement.

36.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

c.      *"Default", "Foreclosure' And "Margin Calls"*

37.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact, and respectfully refer the Court to the Global Paying Agency Agreement for its terms and conditions. Dispute that Compass could only make payments if the assets liquidated. Rule 56.1 Statement, ¶ 9; G. Fragin Depo. 71:17-22, 123:11-16.

38.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

39.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

40.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact, and respectfully refer the Court to the Global Paying Agency Agreement for its terms and conditions.

41.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

42.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

43.     Admit.

44.     Deny knowledge and information sufficient to form a belief as to the truth of the statement.

> *d.*       *Payment & Extension Of The Senior Repo*

45.     Admit.

46.     Admit.

47.     Admit.

48. Admit.

49. Admit.

50. Admit that under the Paydown and Extension Agreement, the Senior Repo would be paid down, but dispute that the total amount is $10 million. The three payments in the Agreement total $23,087,954.   Rule 56.1 Statement, ¶ 50.

      v.    <u>The Gottex Participation Position In The Senior Repo ($37 million of the $38 million Senior Repo)</u>

51. Dispute that Silar was interested in doing the transaction; Silar stepped in at the last minute when the financing arranged by Mr. Mezei fell through.  G. Fragin Depo 64:24-65:21; 105:6-13.

52. Admit.

53. Admit.

54. Deny knowledge and information sufficient to form a belief as to the truth of the statement.

55. Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.  Admits that Mr. Mezei testified as set forth in paragraph 55.

56. Deny knowledge and information sufficient to form a belief as to the truth of the statement.

57. Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory as to the "'pass through' nature of the participation interest," and not a statement of fact.

58. Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

vi. The Preferred Piece, Junior To The Senior Repo ($10 million)

59. Admit.

60. Admit that the junior "Preferred" piece was purchased for approximately $10 million but deny knowledge and information sufficient to form a belief as to the truth of the statement that it was "believed to be worth approximately $10 million."

61. Admit.

vii. The "Common" Or "Equity" Tier, Junior To Both The Preferred Piece And The Senior Repo ($2 million)

62. Admit that the equity piece was approximately $2 million but dispute that the total amount was a $50 million financing transaction. 1st Mezei Decl., Exhibit 18 at page 3.

63. Admit.

64. Deny knowledge and information sufficient to form a belief as to the truth of the statement.

C. **Gary Was An Insider To The Transaction**

i. Gary Was A Silar Partner

65. Admit.

66. Admit except dispute that Mr. Greg Fragin joined Silar in December 2006. G. Fragin Depo., 40:18-19.

67. Admit.

68.     Admit that while working at Silar, Mr. Gary Fragin was responsible for

dealing with investors and administration, but disputes that he was responsible for

"negotiating the Senior Repo." G. Fragin Depo., 35:23-24; 71:9-11, 74:10-17, 75:17-

76:8, 81:19-84:25, 100:17-20, 104:5-1:05:18, 122:3-6.

69.     Disputes Mr. Gary Fragin had been involved with "repos" prior to joining

Silar other than "repos" involving financing investments in U.S. and other treasury

instruments in the overnight repo market and disputes that Mr. Fragin was involved with

any repo similar to the Senior Repo. G. Fragin Depo., 42:3-18, 43:8-16.

        ii.     Gary Negotiated The $50 Million Transaction

70.     Dispute that Mr. Gary Fragin actively negotiated the Senior Repo and

preferred pieces or was involved in conversations concerning Gottex obtaining the

participation position from Silar, but admits that he was involved in discussions that

concerned increasing the return rate on the preferred piece. G. Fragin Depo., 35:23-24;

71:9-11, 74:10-17, 75:17-76:8, 81:19-84:25, 100:17-20, 104:5-1:05:18, 122:3-6.

71.     Admit that Silar's office was in the same location as Mr. Mezei's (333

Seventh Avenue in Manhattan) but dispute that Mr. Mezei and Mr. Fragin would talk and

interact about the transaction daily, "discussing all of the subtleties and details of the

transaction." 81:24-84:25.

72.     Dispute that Mr. Fragin helped evaluate whether Compass should do the deal.

G. Fragin Depo., 35:23-24; 71:9-11, 74:10-17, 75:17-76:8, 81:19-84:25, 100:17-20,

104:5-1:05:18, 122:3-6.

73.     Dispute that Mr. Mezei would not have done the deal without Silar; in fact, Mr. Mezei had another source of financing lined up and turned to Silar only when the other source pulled out at the last minute.  G. Fragin Depo., 64:24-65:21, 105:6-13.

74.     Dispute that Mr. Fragin was a totally active player in "evaluating whether we should do this deal at all," and further disputes that Mr. Mezei would not have done the deal without Silar; in fact, Mr. Mezei had another source of financing lined up and turned to Silar only when the other source pulled out at the last minute.  G. Fragin Depo., 64:24-65:21, 105:6-13; id, 35:23-24; 71:9-11, 74:10-17, 75:17-76:8, 81:19-84:25, 100:17-20, 104:5-1:05:18, 122:3-6.

75.     Dispute that the only source of payment on the Senior Repo was the liquidation of the assets, and that liquidation of the assets might be impaired. Rule 56.1 Statement, ¶ 9; G. Fragin Depo. 71:17-22, 93:6-94:2, 123:11-16.

76.     Admit.

77.     Deny knowledge and information sufficient to form a belief as to the truth of the statement.

78.     Admit.

79.     Admit

80.     Admit

81.     Dispute that Mr. Gary Fragin and Mr. Greg Fragin are not out of contact with their former Silar partners; Mr. Gary Fragin was in touch with Silar "only in trying to get his money out of Silar" and received information from Silar regarding Repotex only after this lawsuit was filed.  G. Fragin Depo., 96:6-11, 114:12-115:23, 138:10-14, 162:23-164:9.

82.     Admit.

      iii.    <u>Gary Personally Owns $400,000 Of The Preferred Piece</u>

83.     Admit

84.     Admit.

85.     Disputes that Mr. Gary Fragin bought another piece of the preferred and disputes that he believed he would be paid "a hundred cents on the dollar." G. Fragin Depo., 108:7-21; 113:5-15.

86.     Disputes that Mr. Gary Fragin knew that the Senior Repo was in "technical default" and that he took the additional interest in the Preferred piece, further states that no response is required because the statement is conclusory and not a statement of fact. G. Fragin Depo., 108:7-21.

87.     Admit.

88.     Admit.

89.     Admit.

**D.**     **Taking Out Gottex**

      i.    <u>Mr. Mezei and Mr. Fragin Discuss Taking Out Gottex For Months</u>

90.     Admit.

91.     Admit

92.     Admit

93.     Admit

94.     Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

    ii.    <u>Mr. Mezei's Efforts To Buy Out Gottex And The Purchase Of Part Of Gottex's Position</u>

       *a.*    *Paradigm*

95.    Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that Mr. Mezei told Mr. Fragin in late May 2008 that "he had someone who wanted the whole thing, and he wanted to take – he was going to buy Gottex's whole thing. And then he brought up to me if you have any pockets that might be interested to, you know, if you have any money that you might be interested in part of it, I can get you in but you have to hurry." G. Fragin Depo., 127:18-130:2.

96.    Deny knowledge and information sufficient to form a belief as to the truth of the statement.

97.    Deny knowledge and information sufficient to form a belief as to the truth of the statement and further respond by stating that Mr. Mezei told Mr. Fragin in late May 2008 that "he had someone who wanted the whole thing, and he wanted to take – he was going to buy Gottex's whole thing. And then he brought up to me if you have any pockets that might be interested to, you know, if you have any money that you might be interested in part of it, I can get you in but you have to hurry" and Mr. Fragin subsequently learned that the "someone" was Paradigm. G. Fragin Depo. 127:18-130:2.

98.    Deny knowledge and information sufficient to form a belief as to the truth of the statement.

99.    Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

       *b.*    *Repotex And The Other Repotex Note Holders*

100.     Deny knowledge and information sufficient to form a belief as to the truth of the statement.

101.     Admit that Repotex issued promissory notes but dispute that the notes represented participation interests in the Senior Repo, because it is Repotex not the noteholders that holds the direct participation piece in the Senior Repo.  Rule 56.1 Statement, ¶100 (Repotex was formed to purchase an interest in the Gottex piece); G. Fragin Depo., 140:4-13.

102.     Deny knowledge and information sufficient to form a belief as to the truth of the statement.

103.     Deny knowledge and information sufficient to form a belief as to the truth of the statement.

104.     Deny knowledge and information sufficient to form a belief as to the truth of the statement but dispute that Mr. Mezei told the other noteholders about the Paydown and Extension Agreement or the default under that Agreement.  Mezei Depo., 118:24-119:5, 119:20-123:2.

105.     Deny knowledge and information sufficient to form a belief as to the truth of the statement but dispute that Mr. Mezei told the other noteholders about the Paydown and Extension Agreement or the default under that Agreement.  Mezei Depo., 118:24-119:5, 119:20-123:2.

106.     Deny knowledge and information sufficient to form a belief as to the truth of the statement but dispute that Mr. Mezei told the other noteholders about the Paydown and Extension Agreement or the default under that Agreement.  Mezei Depo., 118:24-119:5, 119:20-123:2.

107. Dispute the statements in paragraph 107 because Mr. Mezei admits he marketed the investment through Paradigm Partners. Rule 56.1 Statement, paragraphs 95-98.

108. Admit.

109. Dispute that the notes issued by Repotex reflect that the transaction was a purchase of a participation position in the Senior Repo, and that the notes were to pay only when Silar paid participants. The Notes expressly state that they are Term Promissory Notes with a maturity date of June 1, 2010, that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. Greenberger Decl., Ex. 4 (and Exs. A-E) at page 1 of each Note and at paragraph 4 of each Note.

110. Dispute that the actual understanding and agreement was that the note holders would only be paid when Repotex received money from Silar. The Notes expressly state that they are Term Promissory Notes with a maturity date of June 1, 2010, that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. Further, Mrs. Fragin testified that the "deal was supposed to be a loan, with a starting date, an ending date, a monthly interest payment for two years, and then I would have my money back." Greenberger Decl., Ex. 4 (and Exs. A-E) at page 1 of each Note and at paragraph 4 of each Note; K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

**E.      Mr. Mezei's Social & Business Relationship With Mr. Fragin**

111. Admit

112. Admit

i.   Past Transactions

113.   Admit

114.   Admit that Mr. Fragin invested money with Mr. Mezei and his related entities, but dispute that Mr. Fragin invested the $800,000 at issue in this litigation (which was invested by the Nussbaum Trusts) and disputes that Mr. Fragin profited millions of dollars; in fact, Mr. Mezei and his related entities have failed to make payments due to Mr. Fragin and his related entities.  Greenberger Decl., Ex. 11; G. Fragin Depo., 46:7-47:15, 48:11-53:4.

115.   Admit, but dispute that Mr. Fragin invested the $800,000 at issue in this litigation.  Greenberger Decl., Ex. 11.

116.   Admit.

117.   Dispute that Mr. Fragin held himself out as controlling the Trusts' investments or funds, or that Mr. Fragin had control of the Trusts' investments or funds.  G. Fragin Depo. 129:7-130:22.

118.   Admit.

119.   Dispute that Mr. Fragin held himself out as controlling the Trusts' investments or funds, or that Mr. Fragin had control of the Trusts' investments or funds.  G. Fragin Depo. 129:7-130:22.

120.   Dispute that Mr. Fragin held himself out as controlling the Trusts' investments or funds, or that Mr. Fragin had control of the Trusts' investments or funds, deny knowledge and information sufficient to form a belief as to the truth of the statement as to what Mr. Mezei did or not believe, and further state that no response is required because the statement is conclusory and not a statement of fact.  G. Fragin Depo. 129:7-130:22.

ii.   Gary Knows That Mr. Mezei Is Trying To Buy The Gottex Piece

121.   Dispute that Mr. Fragin knew that Mr. Mezei was looking for money to buy the Gottex piece. Mr. Fragin testified that he was not under the impression that Mr. Mezei was taking steps to take Gottex out, until his conversation with Mr. Mezei on Memorial Day 2008. G. Fragin Depo., 127:12-17.

122.   Dispute that Mr. Fragin had directed one of the Repotex noteholders to Mr. Mezei thinking that individual might be interested in purchasing some of the Senior Repo. Mr. Fragin testified that he did not refer Mr. Mezei to any other investors and further testified that he mentioned Mr. Mezei to Mr. Ben Kest on "nothing to do with Compass" or Gottex. G. Fragin Depo. 136:12-17, 137:18-138:1. Mrs. Fragin testified merely that she knows Mr. Kest through their synagogue. K. Fragin Depo., 100:6-12.

**F.    The $800,000 Transaction**

i.   The Conversation Between Mr. Mezei And Mr. Fragin (Only)

123.   Dispute that Mr. Fragin told Mr. Mezei that he wanted a piece of the Senior Repo. G. Fragin Depo. 124:14-18, 129:13-130:2.

124.   Admit.

125.   Dispute that Mr. Fragin told Mr. Mezei that Mrs. Fragin may be interested in the offer only in their second conversation; rather, when Mr. Mezei first offered the deal to Mr. Fragin, Mr. Fragin told Mr. Mezei that he "will speak to Karen." G. Fragin Depo., 129:7-130:2.

126.   Dispute that Mr. Fragin told Mr. Mezei that Mrs. Fragin may be interested in the offer only in their second conversation; rather, when Mr. Mezei first offered the deal

to Mr. Fragin, Mr. Fragin told Mr. Mezei that he "will speak to Karen." G. Fragin Depo., 129:7-130:2.

127.    Dispute that Mr. Fragin was well versed in the deal or that he and Mr. Mezei had regular conversations about the deal; in fact, Mr. Fragin testified that Mr. Mezei "has never told me anything about this deal" and that he did not know that Mr. Mezei was "taking Gottex out" until their conversation on Memorial Day 2008. G. Fragin Depo., 71:9-11, 74:10-17, 75:17-76:8, 81:19-84:25, 100:17-20, 104:5-1:05:18, 122:3-6, 127:12-17, 128:17-24, 137:18-138:1.

128.    Dispute that Mr. Fragin held himself out as controlling the Trusts' investments or funds, or that Mr. Fragin had control of the Trusts' investments or funds. G. Fragin Depo. 129:7-130:22.

129.    Dispute that Mr. Fragin told Mr. Mezei that Mrs. Fragin may be interested in the offer only in their second conversation; rather, when Mr. Mezei first offered the deal to Mr. Fragin, Mr. Fragin told Mr. Mezei that he "will speak to Karen." G. Fragin Depo., 129:7-130:2.

130.    Dispute that Mr. Fragin held himself out as controlling the Trusts' investments or funds, or that Mr. Fragin had control of the Trusts' investments or funds, and further state that any implication that Mr. and Mrs. Fragin were required to assert to Mr. Mezei that the Trusts were not accredited investors is conclusory and not a statement of fact. G. Fragin Depo. 129:7-130:22.

      ii.    <u>Karen, Nancy & The Trusts</u>

131.    Admit.

132.    Admit.

133.    Admit.

134.    Admit.

135.    Admit.

136.    Admit.

      iii.    <u>The Trusts' Funds Are Sent to EGG</u>

          *a.*        *The Funds Are Sent*

137.    Admit and further clarify that three of the Trusts transferred funds on June 3, 2008.  Greenberger Decl., Ex. 11.

138.    Admit.

          *b.*     *EGG & Issuance Of Repotex Notes To The Trusts*

139.    Admit that EGG put $1.3 million toward Repotex' purchase of Gottex's piece but dispute that it did so as a "placeholder."  EGG put in the money as of May 1, 2008, when the second payment was due from Repotex to Gottex under the Paydown and Extension Agreement, to avert a default.   2d Mezei Decl., Ex. B; Friedman Depo. Ex. 1, Mezei Depo., 130:13-25.  This was weeks before Mr. Mezei and Mr. Fragin discussed any purchase of Gottex' piece by the Trusts.  G. Fragin Depo. at 127:12-17; Mezei Depo.,133:9-16.

140.    Admit that EGG received the Trusts' $800,000, but Defendants seek to mislead the Court with their description of the transaction.  The facts show that EGG kept the $800,000 that the Trusts transferred to EGG for purchase of Compass notes, and that EGG used the Trusts' funds to pay off its own note from Repotex after Repotex had defaulted on the Paydown and Extenstion Agreement.  Mezei Depo, 141:17-23; Rule 56.1 Statement, ¶ 144; Friedman Depo, Ex. 1.  The facts further show that EGG did not

give the Trusts a participation interest in the Senior Repo but rather Notes from Repotex, which held the participation interest in the Senior Repo. Greenberger Aff., Ex. 4; Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13.

141.    Admit that Repotex issued $800,000 in promissory notes to the Trusts for the amount that each Trust contributed, but dispute that the notes represented an $800,000 participation interest in the Senior Repo because Repotex held the participation interest in the Senior Repo. Greenberger Aff., Ex. 4; Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13.

142.    Dispute that Mr. Fragin testified that this was a private placement; he testified that Mr. Mezei, through Paradigm, was "out there raising money from a bunch of people" and that the deal "didn't conform" to a private placement. G. Fragin Depo., 170:9-171:8.

143.    Admit.

144.    Admit that EGG kept the Trusts' $800,000 but dispute that no other Defendant has exercised dominion over the $800,000; Mr. Mezei admits that he is president of EGG and trustee of its employee stock ownership plan trust. Rule 56.1, ¶ 147.

145.    Admit and further state that the evidence shows that Mr. Mezei did reduce his own exposure to Repotex and the Senior Repo by paying down EGG's note from Repotex with the $800,000 that EGG received from the Trusts. Mezei Depo, 141:17-23; Rule 56.1 Statement, ¶ 144.

146.    Plaintiffs and Third-Party Defendant lack knowledge and information sufficient to form a belief as to the truth of the statement as to what Mr. Mezei believed or did not believe, but dispute that Mr. Mezei had reason to believe that the Senior Repo

would be paid in full. The Paydown and Extension Agreement evidenced that Compass was not making the payments to Gottex due under the Senior Repo. Friedman Depo., Ex. 1. Further, the fact that the Paydown and Agreement was in default when the Trusts sent their $800,000 to EGG, and was close to default when EGG put in its $1.3 million (but averted default only because Silar and EGG made the May 1 payments due under that Agreement) was evidence that Compass would be unable to repurchase its assets and would lose its equity piece in the deal. 2d Mezei Decl., Ex. B; Friedman Depo. Ex. 1, Mezei Depo., 130:13-25, 141:17-23; Rule 56.1 Statement, ¶ 144.

147. Deny knowledge and information sufficient to form a belief as to the truth of the statement but admit that Mr. Mezei has submitted a document entitled Stock Purchase Agreement.

148. Deny knowledge and information sufficient to form a belief as to the truth of the statement but admit that Mr. Mezei has submitted a document entitled Stock Purchase Agreement.

      iv.   <u>The Trusts Sent The $800,000 To Purchase A Participation Interest In the Senior Repo</u>

149. Admit.

150. Dispute that Mrs. Fragin's motive was solely to supplement her children's Trust income; Mrs. Fragin testified that she understood that the deal was an investment opportunity that would generate 18% annual interest. K. Fragin Depo., 74:15-21, 75:15-76:1692:5-12, 93:9-13, 95:21-23, 103:12-104:2.

151. Dispute that Mr. Fragin was a participant in the Senior Repo or that he was protecting his junior preferred interest. The Trusts, not Mr. Fragin, transferred funds to purchase the participation interest, and, at time that the Trusts transferred their $800,000,

Repotex was in default under the Paydown and Extension Agreement in the amount of $13 million.  Greenberger Decl., Ex. 11; Mezei Depo., 140:17-141:2.

152.    Admit that Mr. Fragin understood that the Trusts were purchasing a participation interest in the Senior Repo, but dispute that the Trusts received a participation interest in the Senior Repo.  G. Fragin Depo., 138:25-140:13.

153.    Admit that Mr. Fragin testified as set forth in paragraph 153.

154.    Admit that Mrs. Fragin testified as set forth in paragraph 154.

155.    Admit that Mr. and Mrs. Fragin's intention was for the Trusts to purchase a participation interest in the Senior Repo, but deny that Defendants sold to the Trusts a direct participation interest in the Senior Repo; rather the Defendants issued to the Trusts promissory notes from Repotex which holds the direct participation interest in the Senior Repo.  Greenberger Aff., Ex. 4; Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13.

156.    Admit that the Trustee's and Mr. Fragin's lawyer made the statement set forth in paragraph 156.

157.    Admit that Mr. and Mrs. Fragin's intention was for the Trusts to purchase a participation interest in the Senior Repo, but deny that Defendants sold to the Trusts a direct participation interest in the Senior Repo; rather the Defendants issued to the Trusts promissory notes from Repotex which holds the direct participation interest in the Senior Repo.  Greenberger Aff., Ex. 4; Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13.

> v.    The Trustees Did Not Discuss The Transaction With Defendants Prior To Sending the $800,000

158.    Admit.

159.    Admit.

160.    Admit.

161.  Admit.

162.  Admit that Mrs. Fragin testified as set forth in paragraph 162.

163.  Admit that Mrs. Fragin testified that she did not "know the exact words [Len] gave to Gary," but dispute that Mrs. Fragin does not know what Mr. Fragin and Mr. Mezei discussed; Mrs. Fragin testified that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

164.  Admit that Mrs. Fragin testified as set forth in paragraph 164.

165.  Admit.

      vi.   <u>Karen Does Not Understand The "Technical" Parts Of The Transaction, But Gary Did</u>

166.  Admit, but dispute that Mrs. Fragin does not know what understand the deal; Mrs. Fragin testified that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

167.  Admit, but dispute that Mrs. Fragin does not know what understand the deal; Mrs. Fragin testified that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

168.  Admit, but dispute that Mrs. Fragin does not know what understand the deal; Mrs. Fragin testified that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

169.    Admit.

170.    Admit.

171.    Admit.

172.    Admit.

173.    Dispute that Mr. Fragin understood how the Senior Repo worked or negotiated the transaction.  G. Fragin Depo., 35:23-24; 71:9-11, 74:10-17, 75:17-76:8, 81:19-84:25, 100:17-20, 104:5-1:05:18, 122:3-6.

174.    Dispute as to what Mr. Fragin knew about the Senior Repo.  G. Fragin Depo., 35:23-24; 71:9-11, 74:10-17, 75:17-76:8, 81:19-84:25, 100:17-20, 104:5-1:05:18, 122:3-6.

175.    Dispute that Mrs. Fragin did not understand the allegations in the Complaint; she testified only that she did not understand the "technical" aspects of the deal.  K. Fragin Depo., 85:11-88:16, 91:14-24.

   vii.    The Trustees & Mr. Fragin Conduct No "Due Dilligence"

176.    Admit.

177.    Admit.

178.    Admit that Mrs. Fragin testified as set forth in paragraph 178.

179.    Admit.

180.    Admit.

181.    Admit.

182.    Dispute this statement, because Mr. Mezei did not inform the Trusts or any other Repotex noteholders about the Paydown and Extension Agreement or the default under that Agreement.  Mezei Depo., 118:24-119:5, 119:20-123:2.

183. Admit.

184. Admit.

185. Admit.

186. Admit.

**G.** **The Economics Of The Repotex Notes**

187. Admit.

188. Dispute that Repotex noteholders were in the same position as Repotex and other direct holders of participation interests in the Senior Repo; and further states that no response is required because the statement is conclusory and not a statement of fact. Greenberger Aff., Ex. 4; Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13.

189. Dispute that Repotex noteholders were in the same position as Repotex and other direct holders of participation interests in the Senior Repo, and dispute that the economics were not changed by whether part or all of the Gottex piece was bought, and further states that no response is required because the statement is conclusory and not a statement of fact. Greenberger Aff., Ex. 4; Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13.

      i.    Buying All Or Part Of Gottex' Participation Position In The Senior Repo

190. Admit.

191. Admit that Mr. Fragin testified as set forth in paragraph 191.

192. Admit that Mr. Fragin testified as set forth in paragraph 192.

193. Admit that Mrs. Fragin testified as set forth in paragraph 193.

194. Admit.

195.    Deny knowledge and information sufficient to form a belief as to the truth of the statement regarding what Mr. Mezei believed.

196.    Deny knowledge and information sufficient to form a belief as to the truth of the statement as to how payments to participants were disbursed (Mr. Fragin testified that he does not know one way or the other; G. Fragin Depo., 184:13-186:10), and dispute that payments to the Trusts were supposed to be disbursed in proportion to their purported participation positions; the Notes expressly state that they are Term Promissory Notes with a maturity date of June 1, 2010, that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. Greenberger Decl., Ex. 4 (and Exs. A-E) at page 1 of each Note and at paragraph 4 of each Note; K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

197.    Deny knowledge and information sufficient to form a belief as to the truth of the statement as to how payments to participants were disbursed (Mr. Fragin testified that he does not know one way or the other; G. Fragin Depo., 184:13-186:10), and dispute that payments to the Trusts were supposed to be disbursed in proportion to their purported participation positions; the Notes expressly state that they are Term Promissory Notes with a maturity date of June 1, 2010, that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. Greenberger Decl., Ex. 4 (and Exs. A-E) at page 1 of each Note and at paragraph 4 of each Note; K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

198.    Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

199.    Deny knowledge and information sufficient to form a belief as to the truth of the statement, dispute the assertion that the Trusts were participants in the Senior Repo, and further state that no response is required because the statement is conclusory and not a statement of fact.

200.    Admit.

201.    Admit.

        ii.    The Paydown And Extension Agreement And Foreclosure

202.    Admit.

203.    Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

**H.      Payment On The Senior Repo After the $800,000 Is Sent**

        i.    The Trusts Received Their Proportionate Interest In Senior Repo Payments

204.    Admit that the Trusts did not transfer funds to EGG until June 2008, but dispute that the Trusts ever owned a direct participation interest in the Senior Repo and deny sufficient knowledge and information to form a belief as to the truth of the statement regarding payments to other noteholders.  Greenberger Aff., Ex. 4; Rule 56.1 Statement, ¶ 100; G. Fragin Depo., 140:4-13.

205.     Admit that the records show that Silar distributed $353,364.90 to Repotex on or about February 2, 2009, but deny sufficient knowledge and information to form a belief as to the truth of the statement that this was the "next" distribution by Silar.

206.     Admit that the Trusts contributed $800,000 toward Repotex' position in the Senior Repo but deny that the Trusts only had a right to 9.55% of Senior Repo distributions; the Notes expressly state that they are Term Promissory Notes with a maturity date of June 1, 2010, that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. Greenberger Decl., Ex. 4 (and Exs. A-E) at page 1 of each Note and at paragraph 4 of each Note; K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

207.     Dispute that Repotex "advanced" any payments to the Trusts; the Notes expressly state that they are Term Promissory Notes with a maturity date of June 1, 2010, that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. Greenberger Decl., Ex. 4 (and Exs. A-E) at page 1 of each Note and at paragraph 4 of each Note; K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

208.     Admit that Repotex paid only $36,000 to the Trusts but dispute that Repotex "advanced" any payments to the Trusts; the Notes expressly state that they are Term Promissory Notes with a maturity date of June 1, 2010, that interest was to be paid monthly at the rate of 18% per annum and that the principal and accrued interest was to be paid on the maturity date. Greenberger Decl., Ex. 4 (and Exs. A-E) at page 1 of each Note and at paragraph 4 of each Note; K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

209.    Admit that the Trusts retained the only three interest payments made by Repotex to the Trusts.

210.    Dispute that Repotex "advanced" any payments to the Trusts (see Response to ¶ 208, above); rather, Repotex used the Trusts' own funds, which were held by EGG, to make interest payments to the Trusts. G. Fragin Depo. 142:18-143:18.

211.    Dispute that Repotex "advanced" any payments to the Trusts (see Response to ¶ 208, above) and dispute that Mr. Mezei had reason to believe that that the Senior Repo would be paid in full (see Response to ¶ 146, above)

212.    Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

213.    Deny knowledge and information sufficient to form a belief as to the truth of the statement, and further state that no response is required because the statement is conclusory and not a statement of fact.

ii.    The Senior Repo Is No Longer Paying

214.    Deny knowledge and information sufficient to form a belief as to the truth of the statement.

215.    Deny knowledge and information sufficient to form a belief as to the truth of the statement regarding claims by other Repotex noteholders and dispute that Mr. Fragin solicited noteholders to join the claims.

iii.    Judge Gardephe Held That The Repotex Notes Are Unenforceable

216. Admit that there is no written contract between the Trusts and Repotex other than the Notes, and further state that no response is required because the statement is conclusory and not a statement of fact.

217. Admit that Mr. and Mrs. Fragin did not intend to invest the Trusts' funds in Repotex, but dispute the implication that the Notes do not reflect the parties' agreement that the Trusts' funds would be invested for two years and would earn 18% interest. K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2

218. Admit that Mr. and Mrs. Fragin did not intend to invest the Trusts' funds in Repotex, but dispute the implication that the Notes do not reflect the parties' agreement that the Trusts' funds would be invested for two years and would earn 18% interest. K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2

219. Admit that Mr. and Mrs. Fragin did not intend to invest the Trusts' funds in Repotex, but dispute the implication that the Notes do not reflect the parties' agreement that the Trusts' funds would be invested for two years and would earn 18% interest. K. Fragin Depo., 74:15-21, 92:5-12, 93:9-13, 95:21-23, 103:12-104:2.

220. Admit.

221. Admit that the Opinion and Order includes the language set forth in paragraph 221.

## I.    **Mr. Friedman**

222. Admit.

223. Admit

224. Admit that Mr. Friedman signed the Paydown and Extension Agreement and dispute that Mrs. Fragin does not know what role Mr. Friedman played. Mrs. Fragin

testified to conversations with Mr. Friedman regarding the Notes and the payments due under the Notes. Rule 56.1 Statement, ¶ 225.

    225.   Admit.

    226.   Admit

    227.   Admit.

Dated:       New York, New York
              April 30, 2012

                           Respectfully submitted,

                           _Sheryl Galler_

                           Sheryl B. Galler
                           Hoguet Newman Regal & Kenney, LLP
                           10 East 40th Street
                           New York, New York 10016
                           Telephone: 212-689-8808
                           Facsimile: 212-689-5101